Cite as 2021 Ark. App. 261

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CV-20-427

EDDIE S. WATKINS III

APPELLANT

V.

RAYMOND ADAMS, PERSONAL
REPRESENTATIVE OF THE ESTATE
OF ETHEL MAE NALLS ADAMS,
DECEASED

APPELLEE

**Opinion Delivered** May 26, 2021

APPEAL FROM THE HOT SPRING
COUNTY CIRCUIT COURT
[NO. 30PR-15-17]

HONORABLE CHRIS E WILLIAMS,
JUDGE

AFFIRMED

## BART F. VIRDEN, Judge

Pro se appellant Eddie S. Watkins III appeals from the Hot Spring County Circuit

Court's order denying his motions to intervene and to set aside an order for the distribution

of assets from his grandmother's estate.[1] Eddie raises several points on appeal. He argues that

he was denied due process in that he was not present at the hearing on his motions. Eddie

also argues that the trial court erred in finding that his mother's "waiver of claim" was not

a "disclaimer" of interest, and he asserts that the disclaimer was brought about by fraud on

---

[1]The motions were filed by both Eddie and his brother, Darrell Highsmith. Darrell,
however, did not appeal from the order denying the motions and is, therefore, not a party
to this appeal. A party cannot appeal the claim of another party. *Springdale Sch. Dist. No. 50
v. The Evans Law Firm, P.A.*, 360 Ark. 279, 200 S.W.3d 917 (2005).

the part of his uncle, appellee Raymond Adams, personal representative of the Estate of Ethel Mae Nalls Adams, deceased. We affirm.[2]

## I. *Background*

Ethel died intestate on November 15, 2013. At the time of her death, she had four adult children: John Adams; Christine Murdock; Raymond Adams; and Dorothy Davis, Eddie's mother. In January 2015, Raymond filed a petition to be appointed personal representative of his mother's estate in which he alleged that Ethel had no real property and that her personal-property value was undetermined because her estate intended to pursue a personal-injury and wrongful-death lawsuit against Arbor Oaks Healthcare and Rehabilitation Center. Raymond was appointed personal representative, and each of Ethel's children filed a waiver of notice, bond, accounting, and inventory and an entry of appearance. Specifically, the siblings waived notice of any hearings for any purpose in connection with the administration of the estate. Legal notice of the opening of the estate was published in the *Arkansas Democrat-Gazette*. On October 4, 2017, the trial court approved a settlement of the nursing-home litigation.

On November 2, 2017, Dorothy filed a "Waiver of Claim and Notice and Entry of Appearance" in which she "waive[d] any claim that she might have in and to any of the proceeds from the administration of the estate of Ethel Mae Nalls Adams, deceased, including any right to proceeds from the settlement of claims" from the nursing-home litigation, Case No. 30CV-15-24. The same waiver was executed by her brother, John.

---

[2]The only reason we are not ordering rebriefing in this case is because appellee provided a supplemental abstract and addendum that were sufficient to allow us to reach the merits of this appeal.

Raymond petitioned for approval of a distribution pursuant to a confidential family distribution and settlement agreement entered into by Ethel's remaining heirs who had not waived their claims, Raymond and Christine. The petition noted that Dorothy and John had waived all claims, including the right to proceeds from the settlement of claims in the nursing-home litigation, and that they would "not be receiving any payments" under the agreement.[3] The petition provided that the proceeds would be distributed to Raymond and Christine 50/50 pursuant to the agreement. On November 3, 2017, the trial court entered an order approving a distribution pursuant to the agreement.

On February 22, 2018, Raymond signed a report of final distribution, indicating that all remaining assets of Ethel's estate had been delivered and distributed to the proper persons and in the correct amounts. Attached were receipts showing that Raymond and Christine had each received their distributions in three installments, the last of which occurred February 22, 2018. The report was filed May 10, 2018. Also on May 10, attorney Jonathan Huber entered his appearance and filed on Dorothy's behalf a demand for notice of any and all proceedings related to the estate and a notification that Dorothy was contesting the validity of previous waivers of notice. The record indicates that Dorothy died on October 10, 2018.

On October 22, 2018, Huber filed on behalf of Eddie and Darrell a motion to intervene, alleging that they had an interest in Ethel's estate as heirs of Dorothy. Huber also filed a motion to set aside the order for distribution and for repayment of proceeds to the

---

[3]DHS had a claim against Ethel's estate for over $500,000 but decided not to pursue that claim due to John Adams's disability.

estate. In the motion to set aside, Eddie alleged that there is no provision in the probate code for a waiver of claim as signed by Dorothy, only a power to "disclaim" an interest in certain property. Eddie alleged that pursuant to Ark. Code Ann. § 28-2-206 (Repl. 2012), any interest in Ethel's estate that Dorothy was eligible to receive passed as a matter of law to her sons/heirs upon her signing and filing the disclaimer of interest and that Dorothy had no authority to enter into a family settlement agreement on their behalf. Eddie alleged that the distribution should be set aside in accordance with section 28-53-110 (Repl. 2012) and pointed out that the estate had failed to provide him with notice pursuant to Ark. Code Ann. § 28-1-112 (Repl. 2012). Raymond filed responses in opposition to the motions, and the trial court scheduled a hearing.

II. *Hearing on March 6, 2020*

At the hearing, Eddie and Darrell were represented by attorney Huber. Huber explained to the trial court that Eddie was not present because he was incarcerated and promptly moved on by calling Darrell "to verify biological facts." Darrell testified that he thought he might have an interest in Ethel's estate when his mother began asking Raymond for money sometime after November 3, 2017, but that he had not received any notice from the estate informing him of such interest. Darrell said that he was not saying that he was entitled to a distribution, that he did not even want the money, and that he just wanted "what's right." Darrell testified that Dorothy was weak and dying of cancer and that Raymond had claimed to be protecting her by having her sign the waiver. On cross-examination, Darrell admitted that he was not present when Dorothy signed the waiver.

4

Raymond testified that he and his siblings got together and discussed the settlement and how to divide the proceeds. He said that it was decided that Dorothy and John would waive their claims to the settlement proceeds and that he and Christine would each take one-half. He said that all of the estate's assets had been distributed by late February 2018.

The trial court denied Eddie's motion to intervene but then addressed the motion to set aside. The trial court noted that Dorothy was alive at the time of Ethel's death; Dorothy was alive at the time of the settlement of the litigation; and Dorothy was alive at the time of the final distribution of the estate. The trial court concluded that Eddie and Darrell had no interest in Ethel's estate and lacked standing to challenge the distribution. The trial court further found that there was no evidence that the waiver signed by Dorothy was intended to be a statutory disclaimer under Ark. Code Ann. §§ 28-2-201 et seq. The trial court also found that there was no evidence of overreaching, misleading, or fraud involved in Dorothy's signing the waiver of claim and no evidence that Dorothy was incompetent or did not understand the waiver. The trial court further found that the wavier of claim signed by Dorothy had been justifiably relied on by the settling and paying parties in the litigation, by the court in approving the distribution, and by the personal representative in distributing the settlement proceeds. The trial court noted that the final distributions were completed by February 22, 2018, and that Eddie and Darrell were estopped from raising a challenge to the settlement and distribution. The trial court then struck several affidavits, including one filed by Eddie. Eddie filed a timely notice of appeal from the order.

III.  *Discussion*

A.  Due Process

Eddie argues that he was denied due process in that he wanted to be present and to testify at the hearing. He points out that the trial court would not sign his prison-transport order. Eddie argues that he could have assisted counsel and that he would have presented other credible witnesses, such as Dorothy's doctors, who would have testified about the strong cancer medications she was taking and her mental state. Eddie also claims that he could have testified to every conversation his mother had concerning the waiver because he was present and could have proved that Dorothy was a victim of fraud perpetrated by Raymond.

Eddie's due-process argument is not preserved. First, Eddie filed a "motion to order inmate's presence at a scheduled hearing/trial" after the hearing had concluded, and the trial court declared the motion moot. Further, his counsel, who represented him at the hearing, did not object to proceeding with the hearing in Eddie's absence, did not move for a continuance until Eddie could be present, and made no mention of Eddie's due-process rights being violated. It is well established that failure to raise an issue before the trial court is fatal to an appellate court's consideration on appeal. *Doran v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 505, 442 S.W.3d 868. It is axiomatic that we will not consider arguments raised for the first time on appeal. *Seymour v. Biehslich*, 371 Ark. 359, 266 S.W.3d 722 (2007).

B.  Motion to Intervene

Eddie filed a motion for permissive intervention. Arkansas Rule of Civil Procedure 24(b) provides that, upon timely application, anyone may be permitted to intervene in an

6

action (1) when a statute of this state confers a conditional right to intervene or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. In exercising its discretion, the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties. *Id.* An order denying permissive intervention is reviewed under an abuse-of-discretion standard. *Certain Underwriters at Lloyd's, London v. Bass*, 2015 Ark. 178, 461 S.W.3d 317.

Eddie's only stated reason why he should be permitted to intervene was his assertion that he and Darrell had an interest in Ethel's estate because they are Dorothy's sons/heirs. Eddie and Darrell, however, did not have an interest in Ethel's estate because they were not Ethel's statutory heirs, given that Dorothy was still alive at the time of Ethel's death. They were not wrongful-death beneficiaries, either, because Ark. Code Ann. § 16-62-102(d)(1) (Supp. 2019) provides that wrongful-death beneficiaries include the surviving spouse, children, father, mother, brothers, and sisters of the deceased person. Eddie and Darrell were Ethel's grandchildren. Moreover, aside from asserting that the motion was timely, the extent of Eddie's argument on appeal going to the denial of the motion to intervene is as follows: "In closing of Arguments, I'd like to finally state as a matter of statue [sic] and law of the State of Arkansas, Mr. Watkins and Mr. Highsmith's interests is a fact 'NOT' putative intervenors I assure this Honorable Court." We cannot say that the trial court abused its discretion in denying the motion to intervene.

C. Motion to Set Aside the Distribution

We review probate matters de novo but will not reverse the probate court's findings of fact unless they are clearly erroneous. *Spurling v. Estate of Reed*, 2018 Ark. App. 185, 544

S.W.3d 119. A finding is clearly erroneous when, although there is evidence to support it, the appellate court is left on the entire evidence with the firm conviction that a mistake has been committed. *Id.* We defer to the superior position of the lower court sitting in a probate matter to weigh the credibility of the witnesses. *Id.*

Arkansas Code Annotated section 28-2-205(a) provides that a person may disclaim, in whole or in part, any interest in property. Section 28-2-206(b)(3)(B) provides that the disclaimed interest passes as if the disclaimant had died immediately before the time of distribution. "Time of distribution" means the time when a disclaimed interest would have taken effect in possession or enjoyment. Ark. Code Ann. § 28-2-206(a)(2). Section 28-2-204(a) provides that the principles of law and equity supplement this subchapter. Subsection (b) provides that this subchapter does not limit any right of a person to waive, release, disclaim, or renounce an interest in property under a law other than this subchapter.

Eddie seems to be arguing that he had standing to challenge the distribution because he essentially "stood in his mother's shoes" when she disclaimed her interest. According to Eddie, a "waiver of claim" is synonymous with a "disclaimer of interest," and he cites *Hunt v. United States*, 566 F. Supp. 356 (E.D. Ark. 1983), involving disclaimed interests.

The trial court, however, found that there was no evidence that Dorothy intended to disclaim her interest; rather, the evidence showed that she executed a waiver in favor of her siblings, Raymond and Christine.[4] Family settlement agreements are favored and should

---

[4]Eddie's own words indicate that Dorothy did not disclaim her interest because he pushes a fraud narrative on appeal and asserts that Dorothy signed the waiver, "not because she didn't want nothing to do with the money" but because she was afraid that accepting the settlement proceeds would result in the discontinuation of her disability/SSI check. Eddie also claims that Dorothy signed the waiver because she wanted to avoid paying taxes

8

be encouraged when no fraud or imposition is practiced. *Green v. McAuley*, 59 Ark. App. 114, 953 S.W.2d 66 (1997). The agreement here was provided for the trial court's in camera review, and Raymond testified to the discussion by the siblings and the agreement that they reached as a family regarding the distribution of Ethel's estate and the proceeds from the settlement. The trial court must have believed Raymond's testimony, and we defer to the trial court's determination of credibility. *Spurling*, *supra*. Moreover, the trial court found that there was no evidence of fraud. Although Darrell uttered the word "fraud" in his testimony at the hearing, no argument was made to the trial court that Dorothy's waiver or the settlement agreement were the result of fraud perpetrated on Dorothy. Moreover, Dorothy did not allege fraud while she was alive. Even Eddie did not allege fraud in his motion to set aside the distribution. Further, there was no evidence that Dorothy was incompetent or did not understand what she had signed. We cannot say that the trial court clearly erred in finding that Dorothy waived her claims and interest in her mother's estate in favor of her siblings. We also find no clear error in the trial court's conclusion that Eddie did not have any interest in Ethel's estate and, therefore, lacked standing to challenge the distribution.

Despite finding that Eddie had no standing, the trial court went on to say that Eddie was estopped to challenge the distribution. For good cause and at any time within the period allowed for appeal after the final termination of the administration of the estate of a decedent or ward, the court may vacate or modify an order or grant a rehearing, Ark. Code Ann. §

---

on the money. Instead of Dorothy's "disclaiming" any interest in the proceeds, Eddie asserts that Raymond placed her portion of the proceeds in his account and gave her money as she requested it to purchase items. Much of this information comes from a petition for temporary lien and freeze of respondent's assets filed by Eddie in a companion case handed down May 19, 2021. *See Watkins v. Adams*, 2021 Ark. App. 248.

28-1-115(a) (Repl. 2012); however, no vacation or modification under this section shall affect any act previously done or any right previously acquired in reliance on such an order or judgment. Ark. Code Ann. § 28-1-115(b). Arkansas Code Annotated section 28-53-110(a) provides that "[u]nless the distribution or payment no longer can be questioned because of adjudication, *estoppel*, or limitations," a distributee of property improperly distributed or paid, or a claimant who was improperly paid, is liable to return any property improperly received. (Emphasis added.) Subsection (d) provides that any suit or proceeding to recover property improperly distributed or the value thereof, money improperly paid, and income or interest, as the case may be, shall be barred three years after the decedent's death or two years after the time of distribution or payment, whichever last occurs.

Eddie argues that his motion to set aside was timely. We agree, and it does not appear as though the trial court found otherwise. Nevertheless, as noted above, estoppel may prevent a distribution from being set aside even when the motion is timely filed according to section 28-53-110(a). The doctrine of estoppel is raised to prevent an injustice to one who has in good faith relied upon the actions, representations, or conduct of another to his detriment. *First State Bank of Crossett v. Phillips*, 13 Ark. App. 157, 681 S.W.2d 408 (1984). Laches, or estoppel, does not arise merely by delay, but by delay that works a disadvantage to another. *Jaramillo v. Adams*, 100 Ark. App. 335, 286 S.W.3d 351 (2007). Where one, knowing his rights, takes no steps to enforce them until the condition of the other party has, in good faith, become so changed that he cannot be restored to his former state if the right be enforced, delay becomes inequitable and operates to estop the asserted right. *Id*. Estoppel is a question of fact. *Phillips*, *supra*.

In finding that Eddie was estopped to challenge the distribution, the trial court noted that the waiver of claims that Dorothy had signed was justifiably relied on by the settling and paying parties in the litigation, by the court in ordering the settlement and distribution, and by the personal representative in distributing the proceeds. Eddie does not attack the trial court's finding that he was estopped from challenging the distribution. The issue is thus considered abandoned on appeal. *Norris v. Davis*, 2015 Ark. 442, 476 S.W.3d 163.

## D. Other Matters

The rest of Eddie's argument pertains to matters that were either not presented to the trial court or were specifically disregarded by the trial court. Eddie especially wants this court to consider his allegations of fraud perpetrated by Raymond against Dorothy. An appellate court, however, does not consider matters outside the record. *Muntaqim v. Lay*, 2016 Ark. 206 (per curiam). Most notably, the trial court struck and refused to consider Eddie's affidavit filed one day before the hearing, yet he presents it to this court in his addendum and refers to its contents in his argument. Eddie, however, did not object to the striking of his affidavit. In fact, his attorney agreed with opposing counsel that it should be struck. Furthermore, Eddie did not proffer the document for the record and makes no argument on appeal that the trial court erred in striking his affidavit. *Doran*, *supra*. We, therefore, do not consider Eddie's allegations of fraud contained in his affidavit.

Affirmed.

HARRISON, C.J., and KLAPPENBACH, J., agree.

*Eddie S. Watkins III*, pro se appellant.

*Appellate Solutions, PLLC*, by: *Deborah Truby Riordan*, for appellee.